(60 Misc. Rep. 250.)

### EGGLESTON v. SCHEIBEL et al.

(Supreme Court, Trial Term, Westchester County.   May, 1908.)

1. HAWKERS AND PEDDLERS—LICENSES—CONDUCT OF BUSINESS.

> One having a license under Laws 1896, p. 315, c. 371, for hawking and
> peddling, and having a permit from the clerk of a city to peddle within
> the city, has no right to set up boxes as a stand in a public street and
> maintain the same there for a considerable length of time; the business
> of "hawking and peddling" involving the practice of carrying merchan-
> dise from place to place for sale with brief temporary stops, and not in-
> cluding the right to take for any considerable length of time exclusive
> possession of any part of a highway.
>
> [Ed. Note.—For other definitions, see Words and Phrases, vol. 4, pp.
> 3220–3222; vol. 6, pp. 5260–5267; vol. 8, p. 7750.]

2. SAME—ORDINANCES—VIOLATIONS.

> One having a peddler's license under Laws 1896, p. 315, c. 371, who per-
> sists in maintaining a stand in a public street notwithstanding the direc-
> tion of a police officer to the contrary, willfully violates an ordinance
> prohibiting the obstruction of the public streets, etc., and an officer may
> arrest him, though he believed that his license authorized him to do what
> he undertook to do.

Action by Herbert E. Eggleston against John Scheibel and others.
There was a judgment for plaintiff. Heard on motion for a new trial.
Granted.

Elmer P. Smith, for plaintiff.
F. X. Donoghue, for defendants.

MILLS, J. This is an action for false imprisonment by the plain-
tiff against the defendants, police officers of the city of Yonkers, one
of whom, viz., Scheibel, arrested the plaintiff in the city of Yonkers
on the night or evening of March 28, 1903, and the others of whom
participated in holding the plaintiff under such arrest until the follow-
ing morning, when he was discharged by the city judge.

The plaintiff was an honorably discharged soldier of the United
States in the Civil War, and as such, under chapter 371, p. 315, of
the Laws of 1896, was entitled to peddle goods anywhere in this state
by procuring a license therefor as therein provided. He had, in ac-
cordance with the terms of such act, procured such license from the
clerk of the county of New York, and also on the 24th of March, 1903,
one from the clerk of the county of Westchester, wherein he resided.
He had also, on the 21st of March, 1903, obtained from the city clerk
of Yonkers a paper purporting to be a permission to him, the plaintiff,
to peddle goods within the limits of the city of Yonkers.   In the early
evening of the 28th of March, 1903, the plaintiff, having such licenses
and permit, proceeded to Getty Square, a public highway in the city
of Yonkers, taking with him two wooden boxes, and placed them in
such highway, and then stood upon one and used the other as a plat-
form or counter on which to display his goods, certain boxes of oint-
ment, for sale, and had attached to the latter box a kerosene torch, and
then proceeded to cry and hawk his goods for sale from such boxes
at such place.   The defendant Scheibel, being a police officer of such
city and on duty at said place, saw and heard the plaintiff there thus

proceeding, and went to him and informed him that he was violating an ordinance of the city by having such stand at that place, and directed him to desist. Thereupon the plaintiff told him that he would not stop unless he was arrested. Said defendant then arrested him and took him to the station house. The other defendants participated, to some extent at least, in the detention of the plaintiff at the station house until the following morning, when the city judge in due course arrived, and upon examination of the matter took formal complaint from the officer and discharged the plaintiff upon his own recognizance to a future day for further hearing, thus ending the imprisonment of the plaintiff.

Upon the trial it appeared that at that time there was an ordinance of the city of Yonkers in force and effect prohibiting any person from suffering to remain in a public street any box, cask, stone, or certain other named articles without permit of the commissioner of public works, and also another ordinance in general terms prohibiting any obstruction of the public streets. It was, at the trial, undisputed that the plaintiff was entitled to hawk and peddle his goods within the city of Yonkers; but the contention by the counsel for the defendants was that such right did not authorize him permanently—that is, for any considerable period of time, such as an evening (as was the plaintiff's intention at the time of his arrest)—to occupy any particular part of a public street; i. e., by setting up, to such extent permanently, a stand of any sort for the sale of goods. For the purposes of the trial the court ruled that the plaintiff's right to peddle did embrace and include the right to have and maintain such a stand. Exception was duly taken by the defendants' counsel to such ruling and to the charge of the court to the jury in accordance therewith. The jury rendered a verdict in favor of the plaintiff for $300. Thereupon the defendants moved for a new trial, upon the special ground that the court had erred in such ruling and instruction, and that as matter of law the arrest and detention of the plaintiff by the defendants was lawful, so that the verdict for the plaintiff was contrary to the law and the evidence. Decision upon the motion was reserved; counsel to submit briefs.

After examining the briefs which have been submitted, and considering the matter, I am of the opinion that the plaintiff's right to peddle and hawk his goods within the city of Yonkers did not authorize him to set up boxes as a stand in a certain particular place in a public street and to maintain them there for a considerable length of time. The business of hawking and peddling, as generally understood, involves the practice of carrying merchandise about from place to place for sale, with brief temporary stops, and does not include the right to take for any considerable length of time permanent and exclusive possession of any part of the highway. The license which the plaintiff possessed, either under the veterans' act (so called) or from the city clerk, could not properly be construed to give him any such right to take permanent and exclusive possession of any portion of a highway in the city; and when he undertook to do so, and persisted in maintaining there his stand of boxes against the direction of the police officer to the contrary, he must be regarded as having willfully violated the ordinances of the city by unlawfully obstructing a public street thereof,

notwithstanding the fact that he may and undoubtedly did believe that his veteran's license authorized him to do what he had undertaken to do. Therefore I conclude that the arrest and detention of the plaintiff was lawful, and did not constitute false imprisonment.

The motion for a new trial is therefore granted.